UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 05 B 54618 |
| | ) | Chapter 7 |
| JEFFERY ECKERT, | ) | Judge John H. Squires |
| | ) | |
| Debtor. | ) | |

## MEMORANDUM OPINION

This matter comes before the Court on the interim fee application (the "Application") of Freeborn & Peters LLP (the "Applicant"), as special counsel to David E. Grochochinski, the Chapter 7 Trustee of the bankruptcy estate of Jeffery Eckert (the "Debtor"), and the objection thereto filed by Gregory Steiner and Agristar Frozen Foods, Inc. (collectively the "Objectors"). The Applicant initially sought fees of $364,395.60, plus reimbursement of expenses which totaled $37,653.04 for the period from September 1, 2006 through January 31, 2009. In response to the objection, the Applicant voluntarily reduced its claim for fees by fifteen percent to $309,736.26. For the reasons set forth herein, the Court allows the Applicant interim compensation in the sum of $140,000 and reimbursement of expenses in the sum of $29,371.49.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

-2-

## II. FACTS AND BACKGROUND

Many of the relevant facts and background are contained in prior Opinions of the Court. *Grochochinski v. Eckert (In re Eckert)*, 375 B.R. 474 (Bankr. N.D. Ill. 2007) (revoking the debtor's discharge for his refusal to obey orders of court), *aff'd*, No. 07 C 6012, 2008 WL 4547224 (N.D. Ill. Apr. 2, 2008); *Grochochinski v. Schlossberg (In re Eckert)*, 388 B.R. 813 (Bankr. N.D. Ill. 2008) (allowing avoidance and recovery of fraudulent transfers made by the debtor), *aff'd*, 402 B.R. 825 (N.D. Ill. 2009). The Debtor filed his voluntary Chapter 7 petition on October 14, 2005, after hot pursuit in other fora by various of his creditors, most notably the Objectors. They were represented by the Applicant, who entered an appearance for these creditors on December 22, 2005. On February 3, 2006, the Trustee applied to employ the law firm of which he is a member, Grochochinski, Grochochinski & Lloyd, Ltd., as his attorneys. That application was allowed on February 10, 2006. On May 18, 2006, the Trustee applied to retain the Applicant as his special counsel. That application was allowed without objection.

Problems with the Debtor led his original and subsequent attorneys of record to withdraw in June 2006 and May 2007. The Debtor's recalcitrance and non-compliance with discovery orders required the Applicant to file motions to compel, which resulted in sanctions and civil contempt orders directed to, among others, the Debtor, his spouse, and her counsel.

In addition to a revocation of discharge proceeding, the Applicant filed a complex avoidance and recovery action against transferees of property that had been fraudulently conveyed by the Debtor to his spouse and three individuals who were accomplices to a scheme the Debtor hatched to hinder, delay, and defraud his creditors. The Trustee was represented by the Applicant in both the revocation of discharge and avoidance and recovery adversary proceedings. The

details of those proceedings are contained in the above-referenced Opinions. Ultimately, judgments in the avoidance and recovery action were obtained in favor of the Trustee and against the following individuals: the Debtor's spouse in the sum of $281,112.99; David Schlossberg in the sums of $109,000, $120,000, and $52,357.54; Gary Laliberte in the sums of $120,000 and $52,357.54; and Marcelo Carlos in the sum of $76,207. The aggregate of these judgments totals $811,035.07. The avoidance matter was settled by most of the parties after trial. The estate has received approximately $282,000 from the settling defendants. (Docket No. 170.)

The Trustee has estimated the fees for his services at approximately $15,000; his firm's attorneys' fees and costs at approximately $2,500; and his accountants' fees and costs at approximately $1,500. Accordingly, the estimated additional fees for these administrative claimants total approximately $19,000. The latest annual report filed by the Trustee shows $282,247.13 on hand as of December 31, 2008. Thus, the estate appears administratively insolvent at this juncture and the prospects for additional recoveries are uncertain at best.

Among the other unrecovered assets, in addition to the settlement with most of the defendants in the avoidance action, is the unsatisfied judgment against the Debtor's spouse in the amount of $281,112.99. The collectability of that judgment, however, is highly questionable because she has since filed her own bankruptcy case and recently confessed judgment that the debt to this estate is non-dischargeable. The judgment against Marcelo Carlos in the amount of $76,207 is also of dubious collectability in light of his testimony at trial regarding his precarious financial condition. The Trustee has indicated that a proposal has been made to settle the estate's claim against the Debtor's spouse for a sum exceeding $100,000, and the Debtor has supposedly agreed to pay the $3,000 sanctions assessed against him.

-4-

Although hope springs eternal, the Court will not consider these potential future recoveries for purposes of the instant Application because fees should be allowed and paid based on realized funds on hand, not speculative future expectations that may never ripen into cash in the estate's account. Moreover, the conduct of the Debtor and his spouse has been anything but helpful or cooperative in the administration of this estate thus far, and the Court holds no unrealistic delusions about the reliability of their promises to pay in the future. As a result, the Court will decide this Application in the context of what has happened and what assets are presently available in the estate's account.

### III. APPLICABLE STANDARDS

Section 327(e) of the Bankruptcy Code, which authorizes a trustee to employ special counsel, provides as follows:

> The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327(e). "A threshold requirement under § 327(e) is that the appointment be for a 'special purpose,' and not to represent the trustee in 'conducting the case.'" *In re Neuman*, 138 B.R. 683, 685 (S.D.N.Y. 1992).

The requirements of § 327(e) are strict and appointed special counsel "'should be free of the slightest personal interest which might be reflected in their decisions concerning matters of the debtor's estate or which might impair the high degree of impartiality and detached judgment

expected of them during the course of administration.'" *I.G. Petroleum, L.L.C. v. Fenasci (In re West Delta Oil Co.)*, 432 F.3d 347, 355 (5th Cir. 2005) (*quoting Pierson & Gaylen v. Creel & Atwood (In re Consol. Bancshares, Inc.)*, 785 F.2d 1249, 1256 n.6 (5th Cir. 1986)). Section 327(e) "serves the important policy of avoiding an unnecessary duplication of services at the expense of the estate." *In re NRG Res., Inc.*, 64 B.R. 643, 647 (W.D. La. 1986); *see also In re AroChem Corp.*, 181 B.R. 693, 698 (Bankr. D.Conn. 1995) ("Public policy considerations require court supervision to assure that the services of a professional person employed to seek and collect property for the estate will not be compromised by divided loyalty.").

Interim fee awards under 11 U.S.C. § 331 are discretionary and are subject to reexamination and adjustment during the course of the case. *See In re Taxman Clothing Co.*, 49 F.3d 310, 314 (7th Cir. 1995) (stating "all awards of interim compensation are tentative"); *Herzog v. Leighton Holdings, Ltd. (In re Kids Creek Partners, L.P.)*, 233 B.R. 409, 422-23 (N.D. Ill. 1999) (*citing Taxman*), *aff'd*, 200 F.3d 1070 (7th Cir. 2000). The court may review the case at its conclusion and take into account the results obtained in making a final allowance. *In re Jensen-Farley Pictures, Inc.*, 47 B.R. 557, 588 (Bankr. D.Utah 1985). Pursuant to 11 U.S.C. § 330(a)(1), authorized, employed professionals applying for fees payable out of the bankruptcy estate must demonstrate that their services were actual, necessary, and reasonable. Section 330(a)(1) states in pertinent part as follows:

> After notice to the parties in interest . . . the court may award to a . . . professional person employed under section 327. . .–
> > (A) reasonable compensation for actual, necessary services rendered by the . . . professional person, or attorney and by `any

-6-

> paraprofessional person employed by any such person; and
>
> (B) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1).

In determining the amount of reasonable compensation to be awarded, the Bankruptcy Code instructs courts to consider the nature, the extent, and the value of the services provided, taking into account specific factors. 11 U.S.C. § 330(a)(3). Further, courts are prohibited from allowing compensation for unnecessary duplication of services or services that were not reasonably likely to benefit the debtor's estate. 11 U.S.C. § 330(a)(4). Specifically, §§ 330(a)(3) and 330(a)(4) provide in relevant part as follows:

> (3) In determining the amount of reasonable compensation to be awarded to . . . [a] professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including–
>> (A) the time spent on such services;
>> (B) the rates charged for such services;
>> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

> 4(A) Except as provided in subparagraph (b), the court shall not allow compensation for--
> (i) unnecessary duplication of services; or
> (ii) services that were not--
> (I) reasonably likely to benefit the debtor's estate; or
> (II) necessary to the administration of the case.

11 U.S.C. §§ 330(a)(3) and 330(a)(4)(A).

Courts have a duty to examine independently the reasonableness of the fees requested. *In re Wyslak*, 94 B.R. 540, 541 (Bankr. N.D. Ill. 1988); *In re Chi. Lutheran Hosp. Ass'n*, 89 B.R. 719, 734-35 (Bankr. N.D. Ill. 1988). The burden of proof to show entitlement to the fees requested is on the applicant. *In re Kenneth Leventhal & Co.*, 19 F.3d 1174, 1177 (7th Cir. 1994); *In re Stoecker*, 114 B.R. 965, 969 (Bankr. N.D. Ill. 1990); *In re Pettibone Corp.*, 74 B.R. 293, 299 (Bankr. N.D. Ill. 1987). This burden must not "be taken lightly, especially given that every dollar expended on legal fees results in a dollar less that is available for distribution to the creditors...." *Pettibone*, 74 B.R. at 299. The fee application must stand or fall on its own merits. *See In re Wildman*, 72 B.R. 700 (Bankr. N.D. Ill. 1987).

The main objective of a fee application is to disclose sufficient information to enable a court to assess whether the services provided were reasonable, actual, and necessary. *Wildman*, 72 B.R. at 707-08. In assessing the reasonableness of a requested fee, the Court utilizes, in conjunction with the provisions of § 330(a), the twelve factors set forth in the case of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), which are as follows: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of employment by the attorney due to acceptance

of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 717-19.[1]

Courts may determine what is the reasonable amount of time a professional should have to spend on a given project. *Wildman*, 72 B.R. at 713. The Supreme Court, in *Hensley v. Eckerhart*, 461 U.S. 424 (1983), ruled that "excessive, redundant or otherwise unnecessary" hours should be excluded from the fees sought. *Id.* at 434. In other words, applicants should exercise good faith "billing judgment." *Id.* Reasonable time spent does not necessarily include all time actually expended. *See In re Chas. A. Stevens & Co.*, 105 B.R. 866, 870-71 (Bankr. N.D. Ill. 1989). Hence, the exercise of good faith billing judgment comes into play. Compensation will not be awarded for nonproductive time, or for time spent on services that are duplicative of previously rendered services. In determining what constitutes reasonable compensation, the Seventh Circuit has stated that "there are limits–measured by standards of reasonableness–to what a professional can demand in a bankruptcy case." *Leventhal*, 19 F.3d at 1178. "An increasing attitude in the bankruptcy community is that if the time is actually expended, the applicant is entitled to receive all fees requested. All professionals must be disabused of this fallacious notion." *Chas. A. Stevens*, 105 B.R. at 871.

---

[1] The *Johnson* factors are referenced in LR83.51.5 of the Rules of Professional Conduct for the Northern District of Illinois, applicable here via Local Bankruptcy Rule 9029-4.

-9-

Because of the apparent administrative insolvency of the estate as a result of the instant Application and additional estimated applications, the Court alerted the parties to the relevant precedent of *In re Taxman Clothing Co.*, 49 F.3d 310 (7th Cir. 1995). In that case, the Seventh Circuit held that counsel for a Chapter 11 trustee was justified in pursuing preference claims only until it became reasonably obvious that further litigation would cost more than it was likely to bring into estate. "As soon as it became clear that the preference suit could not yield the estate a net gain, he should have taken the necessary steps to drop it." *Id.* at 314. Counsel was required to return fees awarded for services performed after that point. In rejecting the attorney's argument that he was entitled to the entire amount of the fees he incurred, the *Taxman* court noted:

> the only result of [the attorney's] efforts to recover the alleged preferences was to drain the debtor's estate of 75 percent of its value ($85,000/$113,000), so that together with the other expenses of administration the estate has been depleted to the point where the creditors will realize nothing. But there is a little more merit to the argument than may at first appear. Litigation is a gamble, and a failed gamble can often produce a large net loss even if it was a good gamble when it was made.

*Id.* at 313.

Moreover, the court stated that "[the attorney] was required as a fiduciary of the estate to make a careful judgment whether the number of billable hours that he would be investing was commensurate with the expected gain." *Id.* at 314. The court also pointed out that the result of fee disgorgement would be different perhaps if "for reasons wholly beyond [the attorney's] control the expense skyrocketed–maybe because the defendants put up an unforeseeably stubborn, scorched-earth type of defense." *Id.* Thus, the court concluded:

> It should go without saying that neither the trustee in bankruptcy nor the trustee's lawyer has a duty to collect an asset of the debtor's estate if the cost of collection would exceed the value of the asset. His duty is to endeavor to maximize the value of the estate, . . . which is to say the *net* assets. The performance of this duty will sometimes require him to forbear attempting to collect a particular asset, because the costs of collection would exceed the asset's value. Put differently but equivalently, the care, diligence, and skill that a lawyer for the debtor's estate, . . . like the trustee himself, . . . is required to bestow as part of his fiduciary duty is not merely care, diligence, and skill in the prosecution of the estate's claims. It is also care, diligence, and skill in deciding which claims to prosecute, and how far. This duty placed [the attorney] under an obligation to his client, the debtor's estate, to abandon the preference suit once it became reasonably obvious that further litigation would cost more than it was likely to bring into the estate. We emphasize the words "reasonably obvious." The standard is an objective one: did a time come when a reasonable lawyer in [the attorney's] position would have abandoned the suit? And it allows room for differences in judgment. When abandonment is not the obviously right course, when reasonable professionals could differ over the right course, the professional is not to be penalized, just as a trustee is not to be surcharged for a discretionary judgment that later proves to have been mistaken.

*Id.* at 315 (citations omitted).

In addition, the court aptly noted that the attorney "had an obligation to consider the potential for recovery and balance the efforts required against the results that might be achieved. None of his services beyond the point we have indicated were necessary, and the reasonable compensation for them therefore could not exceed zero." *Id.* at 316 (internal quotation and citation omitted). Thus, the additional fees sought in *Taxman* were ordered to be disgorged. The court ended by noting:

> The result is harsh. But being a creditor and seeing your claim get eaten by a lawyer is a harsh fate as well. Even after the passage of 11 U.S.C. § 330(a)(1), bankruptcy is not intended to be a feast for

> lawyers. As we read *In re Toney*, 171 B.R. 414, 415 (Bankr. S.D. Fla. 1994), "absent extraordinary circumstances, bankruptcy estates should not be consumed by the fees and expenses of court-appointed professionals."

*Id.*

Unfortunately, the *Taxman* case did not decide how much should be left in an estate to pay other claims when a matter has been "over-lawyered." The Court is of the view that something should remain for the other creditors, otherwise all of the funds recovered can be consumed by the Application at bar, a situation which is a bankruptcy variant on the case of *Jarndyce v. Jarndyce* written about in a Charles Dickens novel entitled *Bleak House*. With these principles in mind, the Court will turn to the Application and objection thereto.

## IV. **DISCUSSION**

### A.    Fees Sought

The Applicant utilized the services of ten lawyers and thirteen paralegals and other firm support staff for the work done, which has been categorized as case administration; copying and file organizing; investigation of operations and assets; retention and application for fees; avoidance actions (the vast bulk of the time expended); and other litigation, including the above mentioned sanctions. The Objectors contend that the Applicant's fees are about four times greater than the Applicant estimated. Further, the Objectors maintain that if the instant request is allowed in full and paid, these fees will deplete the estate and all the funds that were recovered by the Applicant for the benefit of the estate will go to the Applicant, not the creditors. The Objectors

argue that the Applicant overstaffed the litigation resulting in an "unconscionable" amount requested, as if these matters were "a sprawling antitrust case."

The Court sympathizes with the Objectors' plight to a point. "[B]eing a creditor and seeing your claim get eaten by a lawyer is a harsh fate. . . ." *Taxman*, 49 F.3d at 316. That being said, however, denial of all fees requested by the Applicant is clearly overkill. But for the Applicant's efforts it is doubtful that any funds would have been recovered. Regardless, the Objectors' contention about overstaffing these matters with up to thirteen professionals from the Applicant's firm is well taken. A team larger than a football squad was not needed to uncover the frauds in this case. To the extent the Applicant overstaffed the litigation and devoted excessive time and personnel, it effectively suffers the consequences via the substantially reduced award discussed *infra*.

In response to the Objectors, the Applicant voluntarily reduced the request by fifteen percent, but contends that it did not overstaff the case. Rather, the Applicant maintains that the complete lack of cooperation from the Debtor and his spouse necessitated the heavy paralegal time and attendant investigations leading to the sanctions imposed. According to the Applicant, in the end it will likely experience a sizeable loss, notwithstanding the fact that all creditors' claims against the Debtor will survive this case as a result of the revocation of his discharge through the efforts of the Applicant. While the Applicant's seemingly altruistic reduction is helpful, the economic reality of the estate's actual recoveries mandates a much more substantial reduction. There is simply insufficient collected funds on hand to pay all administrative claims, and the Applicant is not entitled to any superpriority over the other relatively small, estimated administrative claims of the Trustee, his attorneys, and his accountants. An interim award greater

-13-

than half the recovered and realized cash on hand effectively gives the Applicant a greater interest in the estate than the other claimants. The Court is not inclined to allow the requested award under the equities of the case and the clear directive from the *Taxman* case.

The Trustee proposes a resolution of the dispute between the Applicant and the Objectors as follows: the Application would be allowed in the amount of $320,000, but only $195,000 would be paid and the difference would be subordinated to the remaining funds on hand, about $40,759.95, in order to enable the other administrative claimants and unsecured creditors to receive some distribution; funds collected thereafter would be applied to the allowed but unpaid fees, subject to final determination by the Court; and if no additional funds are recovered and received by the estate, this proposed settlement would be final and act as a voluntary reduction by the Applicant. The thrust of the proposal would effectively provide the Applicant with an interim allowance of forty-nine percent of its aggregate requested fees and expenses. It is not clear to the Court how the Trustee computed that only $40,759.95 would be available for other claimants because that sum plus the proposed allowance of $195,000 to the Applicant equals $235,759.95. The Trustee's latest report shows $282,247.13 on hand. (Docket No. 170.)

The Objectors' principal arguments boil down to two points. First, the Applicant so overstaffed the work performed for the Trustee and the estate that no fees should be awarded in light of the bills the Objectors paid the Applicant for its work on their behalf. Second, the Objectors argue that the Applicant has worked for its own benefit and to the detriment of the Objectors and other creditors. According to the Objectors, the Applicant has divided loyalties and should not be compensated when its remaining client, the Trustee, and its former clients, the Objectors, stand to get nothing if the Application is allowed as requested or even as reduced.

-14-

The short answer to these two arguments is that all professional persons retained under § 327 act in part in their own self-interest unless they are doing so pro bono publico, which the Applicant is decidedly not. There is an inherent tension, but not a proscribed conflict, between the extant system of compensation for professional persons who seek fees from the estate for their services and the economic interests of other creditors and parties in interest who occupy a lower rung on the priority ladder set by 11 U.S.C. § 726. The higher priority afforded claimants like the Applicant, via 11 U.S.C. §§ 726(a)(1), 507(a)(2), and 503(b), over the lower priority afforded claimants like the Objectors who filed unsecured proofs of claim timely under § 726(a)(2) is the result of Congressional policy that affords certain classes of claimants preference in payment. In the context of this matter, the Court is well aware that but for the efforts of the Applicant to pursue the Debtor, his spouse, and his other confederates in his scheme to hinder, delay, and defraud his creditors, including the Objectors, there likely would be nothing to distribute whatsoever. It is true that every dollar paid to administrative claimants is one dollar less to be paid to lower classes of creditors. That happens in the vast majority of cases where there are insufficient assets recovered and liquidated to pay all claims in full, plus interest. This case is not one of those relatively rare estates where there is a surplus to return to the debtor at the end of the case after all claims are paid in full.

As to the second point that the Applicant has somehow failed to satisfy its duty of loyalty to its client, the Trustee, or its former clients, the Objectors, the record is devoid of any evidence whatsoever that the Applicant acted contrary to the interests of its present or former clients, or somehow abandoned them in the Applicant's quest for its own fees. Rather, the Court has observed that the Applicant has vigorously pursued the Debtor, his spouse, and their accomplices.

-15-

The Applicant obtained substantial judgments against all of them and defended the results on appeal with success.

The real problem here is the economics of the estate. What has been realized from the cash settlement in the estate's bank account (approximately $282,000) is far less than the face amounts of the aggregate judgments (approximately $811,000) the Applicant obtained against those defendants. Had the estate been able to collect more or in full on the judgments, the Applicant's fees would be less objectionable because there would be enough funds to pay all administrative claimants as well as a dividend payment to unsecured creditors. The Applicant's requested fees are so disproportionate to the funds recovered, and the allowance of all of those fees and expenses would more than exhaust all of the funds in the estate's account. Accordingly, the Court must reduce the Applicant's fees.

The bottom line here is that there is not enough money in the estate to pay all administrative claimants as well as pay a dividend to unsecured creditors.[2] That being said, the Court allows the Applicant $140,000 in interim fees, which represents approximately one-half of the $282,247.13 that the Trustee currently holds in the estate's account. This reduction of the fees is not intended to disparage the Applicant's efforts. Unfortunately, the economics of the case dictate this reduction. The Court is fully aware that the Debtor's conduct generated an enormous amount of work for the Applicant in order to unravel and undue his extensive efforts to hinder, delay, and defraud his creditors. Further, the Court recognizes that but for the Applicant's efforts,

---

[2] That there is not enough money in the estate to pay all administrative claimants as well as pay a small dividend to unsecured creditors, is the reason why the Court cited the *Taxman* case to the parties. The Court raised the issue in order to fairly deal with the administrative insolvency of the estate head on.

the estate may not have recovered any funds. Indeed, the Applicant performed a commendable job pursuing the Debtor, his spouse, and his cohorts in the avoidance action. Nevertheless, the amount that the Applicant has recovered to date for the estate is exceeded by the fees and expenses it incurred. After all, "absent extraordinary circumstances, bankruptcy estates should not be consumed by the fees and expenses of court-appointed professionals." *Taxman*, 49 F.3d at 316 (internal quotation omitted).

The Objectors are free to pursue the Debtor on their claims because his discharge has been revoked for his misconduct. Perhaps, in the future, they will be able to recover more from him with the efforts of their present counsel.

### B.   Expenses Sought

The Applicant seeks reimbursement of its expenses in the amount of $37,653.04. With regard to expense reimbursement, a fee application should include a detailed itemization of the expenses for which reimbursement is sought, including the date the expense was incurred, the type of expense, and the amount. *Wildman*, 72 B.R. at 731. The Applicant bears the burden of establishing that it is entitled to reimbursement of expenses. *See In re Convent Guardian Corp.*, 103 B.R. 937, 939 (Bankr. N.D. Ill. 1989). The Court will not assume any expense is necessary. *See In re Lindberg Prods., Inc.*, 50 B.R. 220, 222 (Bankr. N.D. Ill. 1985). An expense is necessary, so as to warrant reimbursement, if it was incurred because it was required to accomplish proper representation of the client. *Wildman*, 72 B.R. at 731.

The Court finds that the Applicant has adequately detailed the majority of the expenses for which reimbursement is sought, and has demonstrated that those expenses are reasonable and necessary. However, there are several expenses that must be disallowed. First, the Applicant

-17-

seeks reimbursement for taxicab fares to attorneys' homes when those attorneys were working late. The Court will not reimburse attorneys for transportation to their homes regardless of whether they are working after hours. Thus, the Court disallows $300.10 for taxicab fares.[3]

Next, the Court must address the computer research expenses incurred by the Applicant. The Court generally allows reimbursement of an applicant's expenses for computer research. *In re Prairie Cent. Ry. Co.*, 87 B.R. 952, 960 (Bankr. N.D. Ill. 1988) (recognizing the split of authority regarding the compensability of computer research charges and allowing the expenses to be reimbursed). These expenses must contain adequate detail in order for courts to determine whether the research performed was reasonable and necessary for the representation of the client. In the Application at bar, the Applicant has failed to provide enough detailed information regarding the computer research. The only details furnished are the date the research was performed and the amount incurred. Without more information, such as the nature of the topics researched and how the research was pertinent to the case, the Court is unable to ascertain whether those expenses were reasonable and necessary. As a result of the inadequate details, the Court provisionally disallows the sum of $8,281.55.[4] The Applicant may file a supplement to the

---

[3] The following taxicab fares are disallowed:

| DATE EXPENSE INCURRED | AMOUNT OF EXPENSE |
|---|---|
| 10/31/07 | $ 28.45 |
| 03/31/08 | $123.00 |
| 04/15/08 | $118.00 |
| 04/15/08 | $ 30.65 |

[4] The following computer research expenses are hereby disallowed:

| DATE EXPENSE INCURRED | AMOUNT OF EXPENSE |
|---|---|

-18-

Application to explain, in detail, the necessity for the computer research. That supplement shall be filed within ten days of the date of this Opinion. As for the remainder of the Applicant's expenses, the Court finds those expenses are reasonable and necessary and thus allows those expenses.

| Date | Amount |
|---|---|
| 05/25/07 | $ 56.39 |
| 10/25/07 | $130.59 |
| 02/05/08 | $391.35 |
| 02/06/08 | $ 49.43 |
| 03/12/08 | $139.43 |
| 04/02/08 | $125.92 |
| 04/07/08 | $ 16.85 |
| 04/08/08 | $ 64.80 |
| 04/08/08 | $276.79 |
| 04/08/08 | $315.90 |
| 04/08/08 | $328.36 |
| 04/09/08 | $663.73 |
| 04/09/08 | $135.91 |
| 04/10/08 | $470.02 |
| 04/14/08 | $581.16 |
| 04/17/08 | $200.77 |
| 04/17/08 | $396.47 |
| 04/18/08 | $139.00 |
| 04/18/08 | $499.38 |
| 04/23/08 | $113.72 |
| 04/23/08 | $207.66 |
| 05/12/08 | $ 40.50 |
| 06/18/08 | $ 54.37 |
| 06/26/08 | $251.76 |
| 07/02/08 | $152.25 |
| 07/02/08 | $382.82 |
| 07/03/08 | $253.78 |
| 07/14/08 | $218.24 |
| 07/22/08 | $300.67 |
| 07/25/08 | $ 96.87 |
| 08/14/08 | $146.94 |
| 08/18/08 | $259.24 |
| 08/27/08 | $158.56 |
| 10/21/08 | $ 60.04 |
| 10/22/08 | $ 55.26 |
| 10/23/08 | $ 37.71 |
| 10/29/08 | $ 73.47 |
| 10/29/08 | $124.81 |
| 10/30/08 | $ 10.53 |

-19-

## V. CONCLUSION

For the foregoing reasons, the Court allows the Applicant interim compensation in the sum of $140,000 and reimbursement of expenses in the amount of $29,371.49.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

**ENTERED:**

DATE: 7/31/9

John H. Squires
United States Bankruptcy Judge

cc: See attached Service List

## SERVICE LIST

### In re: Jeffery Eckert
**Bankruptcy No. 05 B 54618**

Neal H. Levin, Esq.  
Freeborn & Peters LLP  
311 S. Wacker Drive, Suite 3000  
Chicago, Il 60606

Jeffrey Eckert  
371 W. Edgemont Lane  
Park Ridge, IL 60068

David E. Grochocinski, Esq.  
Grochocinski Grochocinski & Lloyd, Ltd.  
1900 Ravinia Place  
Orland Park, IL 60462

William T. Neary, United States Trustee  
227 W. Monroe Street  
Suite 3350  
Chicago, IL 60606

Jeffrey Eckert  
255 Cuttriss Street  
Park Ridge, IL 60068

Andrew Staes, Esq.  
Staes & Scallan, P.C.  
111 West Washington St., Suite 1631  
Chicago, IL 60602

Jeffrey Eckert  
1073 Union Court  
Bartlett, IL 60103